# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HASSAN MUHAMMAD,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil Action No. 1:11-cv-01465-WMN** |
| **HYUNDAI CAPITAL AMERICA, INC.,** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OF LAW IN SUPPORT OF
## HYUNDAI CAPITAL AMERICA, INC.'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ............................................................................................................ 1

PROCEDURAL POSTURE ............................................................................................. 2

STATEMENT OF FACTS AS ALLEGED BY PLAINTIFFS ................................... 2

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 4

STANDARD OF REVIEW ............................................................................................. 7

ARGUMENT .................................................................................................................... 9

    I.     The Court Should Award Summary Judgment To HCA On Count One
           Because HCA Gave Plaintiffs All Required Notices And Did Not
           Charge Improper Fees ...................................................................................... 9

          A.     HCA Sent Proper Notices to Plaintiffs ............................................... 10

                  1.     HCA's Notice of Intent to Repossess Complied with
                           CLEC ......................................................................................... 10

                  2.     HCA's Notice of Right to Redeem Complied with
                             CLEC ......................................................................................... 11

                  3.     HCA's Notice of Sale Complied with CLEC ................................ 13

                  4.     HCA's Accounting Notice Complied with CLEC ........................ 14

          B.     HCA's Post-Sale Charges are Permitted by Both the CLEC and
               the RIC ................................................................................................. 15

                  1.     HCA Did Not Assess Delinquency Fees ....................................... 15

                  2.     HCA Properly Charged Plaintiffs for the Actual
                             Collection Charges it Incurred to Retake and Store the
                             Vehicle ...................................................................................... 16

                  3.     Even if HCA Violated the CLEC, Plaintiffs are Not
                             Entitled to Recover Damages Under §§ 12-1018(b) and
                             12-1021(k)(4) ........................................................................... 17

II.    Count Two Does Not Allege An Actionable Breach Of Contract Claim .............18

    A.    Summary Judgment Is Proper on Count Two For the Same Reasons Explained in Count One...............................................18

    B.    Count Two Should be Dismissed Under Rule 12(b)(6) Because it Does Not State a Claim For Which Relief May be Granted.................18

III.    Count Three Requesting Declaratory Judgment And Injunctive Relief Is Improper Because HCA Can Recover The Deficiency Balance And Other Costs From Plaintiffs ......................................................19

    A.    Summary Judgment is Proper on Count Three for the Same Reasons Explained in Count One...............................................19

    B.    Count Three Should be Dismissed Under Rule 12(b)(6) Because it Does Not State a Claim for Which Relief May be Granted...................................................20

IV.    Count Four Alleging Restitution And Unjust Enrichment Fails To State A Claim Upon Which Relief Can Be Granted ...............................20

    A.    Plaintiffs Did Not Pay the Allegedly Illegal Charges ...............................21

    B.    A Claim for Restitution or Unjust Enrichment Cannot Stand When an Express Contract Exists ............................................22

V.    Count Five Alleging Violations of Maryland's Consumer Protection Act and Consumer Debt Collection Act Fails To State A Claim Upon Which Relief Can Be Granted...............................................23

    A.    Plaintiffs Do Not Allege, and HCA Did Not Commit, a Violation of the Consumer Protection Act.................................23

    B.    The Complaint Does Not Allege a Valid Claim Under the Maryland Consumer Debt Collection Act...................................26

**CONCLUSION**...............................................................................26

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................................ 8, 9

*Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305 (4th Cir. 1995) ................................ 7

*Ashcroft v. Iqbal,* 556 U.S. __, 129 S. Ct. 1937 (2009) ............................................ 25

*Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261 (2007) ........................................ 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....... 8, 20

*Bender v. Suburban Hosp. Inc.*, 159 F.3d 186 (4th Cir. 1998) .......................... 7, 21, 22

*Berg v. Byrd*, 124 Md. App. 208 (1998) ................................................................ 25

*Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514 (4th Cir. 2003) . ................. 9

*Caroline County v. J. Roland Dashiell & Sons, Inc.,* 358 Md. 83 (2000) ................... 22

*Citaramanis v. Hallowell*, 328 Md. 142 (1992) ..................................................... 23

*DeReggi Constr. Co. v. Mate*, 130 Md. App. 648 (2000) ........................................ 24

*Drewitt v. Pratt,* 999 F.2d 774 (4th Cir. 1993) ..................................................... 9

*Golt v. Phillips*, 301 Md. 1 (1986) ....................................................................... 23

*Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir. 2005) .................................. 7

*Legg v. Castruccio*, 100 Md. App. 748, 642 A.2d 906 (1994) ............................... 23, 24

*Lerner Dev. Co. Ltd. P'ship v. Lerner*, No. 265653,
   2007 Md. Circ. Ct. LEXIS 5, at *2-3 (2007) .............................................. 18, 19

*Lloyd v. General Motors Corp.*, 397 Md. 108 (2007) ............................................ 24

*Local 333, Int'l Longshoremen's Ass'n AFL-CIO*, 189 F.Supp.2d 282 (D. Md. 2002) ............... 8

*Mona v. Mona Elec. Group, Inc.*, 176 Md. App. 672 (2007) ................................... 21

*Mount Vernon v. Branch*, 170 Md. App. 457 (2006) .............................................. 19

*Odyssey Travel Center, Inc. v. Ro Cruises, Inc.,* 262 F. Supp. 2d 618 (D. Md. 2003). ............ 22

*Orci v. Insituform East, Inc.*, 901 F.Supp. 978 (D. Md. 1995) ............................... 8

*Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................... 7

*Scott v. Harris*, 550 U.S. 372 (2007) .................................................................. 8

*Shin v. Shalala,* 166 F. Supp. 2d 373 (D. Md. 2001) ............................................. 10

*SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780 (9th Cir. 1996) ................ 7

*Swedish Civil Aviation v. Project Mgmt. Enter.*, 190 F. Supp. 2d 785 (D. Md. 2002) ............. 19

*Writ Mortgage, Inc. v. S.A.S. Assocs.*, 214 F.3d 528 (4th Cir. 2000) .......................... 22

**Statutes**

28 U.S.C. § 1453 ............................................................................................ 2, 22

28 U.S.C. § 2201(a) ............................................................................................ 20

Md. Code, CL § 9-201. ...................................................................................... 14

Md. Code, CL § 9-615. ...................................................................................... 14

Md. Code, CL § 9-617(7). .................................................................................. 13

Md. Code, CL § 9-623(c)(2). .............................................................................. 13

Md. Code, CL § 12-1001 .................................................................................... 10

Md. Code, CL § 12-1008 ................................................................................ 15, 16

Md. Code, CL § 12-1018 .................................................................................... 10

Md. Code, CL § 12-1021 .......................................................................... *Passim*

Md. Code, CL § 13-101 ...................................................................................... 25

Md. Code, CL § 13-301 ...................................................................................... 23

Md. Code, CL § 13-303 ...................................................................................... 23

Md. Code, CL § 13-408 ...................................................................................... 26

Md. Code, CL § 14-201 ...................................................................................... 23

Md. Code, CL § 14-202(8) .................................................................................. 29

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HASSAN MUHAMMAD, *et al.*,          *

     Plaintiffs,                          *

     v.                                   *          Civil Action No. 1:11-cv-01465-WMN

HYUNDAI CAPITAL AMERICA, INC.,   *

     Defendant.                           *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OF LAW IN SUPPORT OF
## HYUNDAI CAPITAL AMERICA, INC.'S MOTION TO DISMISS OR, IN THE
## ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Hassan Muhammad, Karen McClendon, and Taliah B. Benning (together, "Plaintiffs") purchased a Hyundai Sonata in February 2006 from Antwerpen Hyundai in Baltimore, Maryland. They financed the purchase with a Retail Installment Contract that Antwerpen Hyundai assigned to Defendant Hyundai Capital America, Inc. ("HCA").

Plaintiffs defaulted on their monthly payments. After giving Plaintiffs an opportunity to cure the default, HCA repossessed the Sonata in September, 2010. HCA sold the Sonata at a private auction in November 2010 for $4,500, leaving a $13,508.04 outstanding debt.

Plaintiffs do not dispute that they defaulted on their payments, do not dispute that HCA lawfully repossessed the Sonata, and do not dispute that HCA had the right to sell the Sonata at a private auction. Instead, Plaintiffs incorrectly, and without factual support, allege that HCA sent them inadequate pre- and post-repossession notices and assessed them charges that are not permitted under Maryland law.

As this Memorandum and the accompanying exhibits demonstrate, HCA's notices and business practices fully complied with Maryland law. The Court should, therefore, dismiss the Complaint as a matter of law.

## PROCEDURAL POSTURE

Plaintiffs filed this lawsuit on April 20, 2011 in the Circuit Court of Maryland for Baltimore City on their own behalf and "on behalf of others similarly situated" whose vehicles were repossessed by HCA. Complaint at ¶ 2. The Complaint purports to allege causes of action for: violations of the Maryland Credit Grantor Closed End Credit Provisions ("CLEC") (Count One); Breach of Contract (Count Two), Declaratory and Injunctive Relief (Count Three); Restitution and Unjust Enrichment (Count Four) and for violations of the Maryland Consumer Protection Act (Count Five). Plaintiffs define the putative class as "all persons whose vehicles were repossessed by [HCA] pursuant to a credit contract governed by CLEC, as to whom [HCA]" allegedly did not provide the notices required by CLEC and as to whom HCA allegedly imposed improper charges. Complaint at ¶ 61.

Plaintiffs served HCA with the Summons and Complaint by first class mail on April 29, 2011. HCA timely removed the case to this Court on May 27, 2011 in accordance with the Class Action Fairness Act 28 USC § 1453. HCA files this timely motion pursuant to Fed. R. Civ. P. 12(b)(6), 56, and 81(c)(2) within seven (7) days after HCA filed its Notice of Removal.

## STATEMENT OF FACTS AS ALLEGED BY PLAINTIFFS

Plaintiffs allege that they purchased a Hyundai Sonata from Antwerpen Hyundai in February 2006. They financed the purchase via a Retail Installment Contract ("RIC") dated

February 24, 2006.  Antwerpen Hyundai subsequently assigned the RIC to HCA.  Complaint at ¶¶ 25, 32; Exhibit 1 to Complaint.[1]

The RIC includes several provisions of particular relevance to this case.  First, the RIC states that the sale is made under "Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland."  Complaint at ¶ 26; Exhibit 1 to Complaint.  Second, the RIC states that "[i]f you default, you agree to pay all court costs and collection costs we actually incur to collect amounts owing."  Complaint at ¶ 28; Exhibit 1 to Complaint.  Third, the RIC states that if the purchaser defaults, HCA may:

> immediately take possession of the [Sonata] by legal process or self-help, . . . We may then sell the [Sonata] and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.

Exhibit 1 to Complaint, Remedy Section p. 2 thereof.

The RIC required Plaintiffs to make seventy-two (72) monthly payments of $587.15.  Plaintiffs made the monthly payments to HCA for a period of time.[2]  Complaint at ¶ 32.  Plaintiffs defaulted and, according to Plaintiffs, HCA repossessed the Sonata on or about October 19, 2010.[3]  Complaint at ¶ 33; Exhibit 2 to Complaint.

Plaintiffs allege that HCA sent an October 19, 2010 letter informing them that the vehicle would be sold at private auction (the "October Notice").  Complaint at ¶ 34; Exhibit 2 to the Complaint.  Plaintiffs further allege that HCA sold the Sonata at a private auction on or about November 5, 2010.  Complaint at ¶ 37.  Afterwards, HCA sent Plaintiffs a Statement of Sale that

---

[1]  For the Court's convenience, a more legible copy of the RIC is attached hereto as Exhibit 1.

[2]  Although not alleged in the Complaint, Plaintiffs' payments were usually late.

[3]  As will be explained in the following section, Plaintiffs' allegations are not supported.  HCA business records attached hereto, show that HCA actually repossessed the vehicle on September 28, 2010.

Plaintiffs allege impermissibly assessed charges not allowed under either the CLEC or the RIC. Complaint at ¶ 38; Exhibit 3 to Complaint.

Plaintiffs also aver that the October Notice did not comply with CLEC and that HCA violated applicable law in selling the Sonata.   Complaint at ¶¶ 44-49; Exhibits 2 and 3 to Complaint.  Specifically, Plaintiffs allege that HCA:

> (1) did not and does not give the legally required notice of the location of where the vehicle is being stored; (2) falsely states that the consumer may get their car back only by paying "the full amount you owe (not just the past due payments), including our expenses; (3) does not give an address of where the consumer can send payments; (4) falsely states that the rights of Maryland consumers to reinstate the contract is conditioned on whether or not [HCA] "previously notified you in writing that you have the right to redeem"; (5) did not and does not provide the amount of money required to redeem the car; and (6) [the October 19, 2010] letter was not hand delivered or sent by registered or certified mail, return receipt requested.

Complaint at ¶ 44.  With regard to the post-sale accounting, Plaintiffs allege that HCA assessed improper "delinquency," "collection," and "Retaking and Storing" charges after the selling the Sonata.  Complaint at ¶ 46.

Plaintiffs demand an array of monetary and injunctive relief from HCA for these alleged "claims."  Plaintiffs' bald allegations and exhibits, however, are incomplete and do not correctly portray how HCA repossessed Plaintiffs' Sonata.  In the following section, HCA references and supports those critical facts and documents.  HCA's factual support, as a matter of law, refutes each one of Plaintiffs' claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

HCA files this motion under Rules 12(b)(6) and 56.  HCA provides this separate statement to identify undisputed material facts that were not necessarily alleged in the Complaint to support its Rule 56 motion.

The Complaint fails to identify, or even mention, two crucial notices HCA sent to Plaintiffs. First, Plaintiffs do not identify HCA's Notice of Default and Intent to Repossess sent, by certified mail, to Hassan Muhammad, Karen McClendon and Taliah Benning on July 20, 2010 (the "July Notice"). Exhibits 2, 3, and 4; *See* Affidavit of Carlos Ayala (hereafter "Ayala Affidavit") attached hereto as Exhibit 5 at ¶¶ 8, 9, 10. The July Notice informed Plaintiffs of their default and of HCA's intent to repossess the Sonata. Importantly, the July Notice explicitly stated that the Plaintiffs <u>did not</u> owe HCA any late charges on the past-due payments. Exhibits 2, 3, and 4. (*See* late charge line item showing a $0 balance). The U.S. Postal Service records show that Mr. Muhammad and Ms. McClendon did not accept delivery of the notices, which HCA sent to their last known addresses on file at HCA. A copy of the certified receipts and the USPS tracking information are attached collectively as Exhibit 6.[4] The U.S. Postal Service records show that the July Notice was delivered to Ms. Benning on July 22, 2010. A copy of the certified receipt and the USPS tracking information are attached as Exhibit 7.

Plaintiffs also conveniently fail to mention the Notice of Plan to Sell Property and Right to Redeem that HCA sent, by certified mail, to Hassan Muhammad, Karen McClendon and Taliah Benning on September 29, 2010 (the "September Notice"). Exhibits 8, 9, and 10. The September Notice was sent one day after HCA repossessed the Sonata on September 28, 2010.[5] Exhibit 5 at ¶ 14 (Ayala Affidavit).

The September Notice informed Plaintiffs of HCA's intent to sell the repossessed vehicle and of their right to redeem the Sonata, which "is currently located at: Remarketing Solutions, 6710 F. Ritchie Hwy., Glen Burnie, MD 21061." Exhibits 8, 9, and 10. The September Notice also explained to Plaintiffs that they had the right to redeem the vehicle by paying "all monthly

---

[4]   Hyundai redacted Exhibits 6 and 7 to remove identifying information about consumers other than Plaintiffs.
[5]   As mentioned earlier, Plaintiffs incorrectly allege repossession occurred "on or about October 19, 2010." Complaint at ¶ 33.

installments, late fees and other amounts due at the time of redemption, and the actual and reasonable expenses of retaking and storing the vehicle" and provided both the address where the redemption payment should be sent and the amount required to redeem the vehicle. *Id.*

As with the July Notice, HCA sent the September Notice to each of the Plaintiffs, by certified mail, at their last known address on file at HCA. Exhibit 5 at ¶¶ 15-17 (Ayala Affidavit). Mr. Muhammad and Ms. McClendon both declined to accept delivery, so their respective copies of the September Notice were returned to HCA as unclaimed. A copy of the certified mail receipts and the USPS tracking information are attached as Exhibits 11 and 12, respectively. Ms. Benning accepted delivery of the September Notice on October 6, 2010. A copy of the certified mail receipt and the USPS tracking information for Ms. Benning's September Notice is attached as Exhibit 13.

Plaintiffs do identify the October Notice in the Complaint. HCA sent that document to each of the Plaintiffs on October 19 by certified mail, return receipt requested. Exhibits 14, 15, and 16. The U.S. Postal Service delivered the October notice to Mr. Muhammad and Ms. McClendon on October 22 and to Ms. Benning on October 25. Copies of the certified mail receipts and the USPS tracking information are attached as Exhibits 17, 18, and 19, respectively. The October Notice explicitly provided Plaintiffs with the date, time, and location where the Sonata would be put on sale. Exhibits 14, 15, and 16.

HCA sold the Sonata at a private sale to Kings Auto Corp., Inc. on November 5, 2010 for $4,500. Exhibit 5 at ¶ 21 (Ayala Affidavit). As stated in the Complaint, HCA sent a Statement of Sale (the "November Notice" or the "Statement of Sale") to Hassan Muhammad and to Karen McClendon on November 16, 2010. Copies of the Statement of Sale are attached as Exhibits 2 and 21. The Statement of Sale also included line items of $370 for "Expenses of Retaking and

Storing," accrued interest of $1,041.88 and a $500.00 expense paid to Miles Body Shop (identified as "Delinquency and Collection Charges").[6]

Lastly and quite importantly, although Plaintiffs allege that HCA wrongfully "assessed and assesses ... delinquency charges ... and collection charges" (Complaint at ¶38), HCA did not charge Plaintiffs any late fees or delinquency charges.  Exhibit 5 at ¶¶ 23-26 (Ayala Affidavit).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(b)(6) permits a court to dismiss a lawsuit for the failure to state a cognizable legal theory or for pleading insufficient facts under a cognizable legal claim.  *SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996).  In ruling on a motion under Rule 12(b)(6), the Court must accept all well-pleaded allegations as true and construe the Complaint in the light most favorable to the plaintiffs.  *Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005).  In addition to relying upon the allegations in the Complaint, the Court may consider "matters of public record, items appearing in the record of the case, as well as exhibits attached to the complaint."  *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995) vacated, (on unrelated grounds) 517 U.S. 1206, remanded to 101 F.3d 325 (4th Cir. 1996) (citing Charles A. Writ and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990)).

However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Bender v. Suburban*

---

[6]  HCA repossessed the vehicle from Miles Body Shop, in Elkridge, Maryland.  Several days prior to HCA repossessing the vehicle, on September 21, 2010, Ms. Benning spoke with HCA and told them she would surrender the Sonata because she could not afford to pay for it.  However, she told them she presently did not have the vehicle because it was being repaired.  On September 23, 2010, Ms. Benning contacted HCA and advised HCA that the vehicle was at Miles Body Shop, 6475 Washington Blvd, Elkridge, MD 21075. Miles Body Shop had performed body work on the vehicle that Ms. Benning's insurer had paid for, with the exception of a $500 deductible.  Miles Body Shop refused to release the vehicle to HCA unless HCA paid the remaining $500 due for the repair work.  HCA paid the $500 payment and its agent repossessed the vehicle on September 28, 2010. *See* Repair Bill attached as Exhibit 22; Exhibit 5 at ¶¶ 12-14 (Ayala Affidavit).

*Hosp. Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) (rejecting conclusory allegations when the factual allegations failed to support those conclusions). A complaint cannot stand if it is based upon mere "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). A plaintiff cannot defeat a motion to dismiss by way of a "formulaic recitation of the elements of a case." *Id.* The factual allegations must be more than a "speculative level," but need sufficient "fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.* A court should dismiss a claim where, as here, it appears "beyond doubt that the plaintiff[s] can prove no set of facts entitling [them] to relief." *Orci v. Insituform East, Inc.*, 901 F.Supp. 978, 980 (D. Md. 1995).

If a Rule 12(b)(6) motion is supported by "matters outside the pleading which the Court does not exclude, the motion shall be treated as one for summary judgment" pursuant to Federal Rule of Civil Procedure Rule 56. *Id.*; *see also Local 333, Int'l Longshoremen's Ass'n AFL-CIO*, 189 F.Supp.2d 282, 284 (D. Md. 2002) (Court treated motion to dismiss as a motion for summary judgment when motion was supported by affidavits and exhibits.). Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. In doing so, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris,* 550

U.S. 372, 378 (2007).  However, this Court must also adhere to its "affirmative obligation … to prevent factually unsupported claims and defenses from proceeding to trial."  *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotations omitted).

A party opposing a properly supported motion for summary judgment "cannot create a genuine dispute of material fact through mere speculation or compilation of inferences" and instead must "set forth specific facts showing that there is a genuine issue for trial."  *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003); *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001).  Moreover, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact."  *Anderson,* 477 U.S. at 247-48.  Thus, if the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Id.* at 249-50.  Applying this standard to the instant case, HCA is entitled to summary judgment on each and every claim.

## ARGUMENT

**I.**  **The Court Should Award Summary Judgment To HCA On Count One Because HCA Gave Plaintiffs All Required Notices And Did Not Charge Improper Fees.**

Plaintiffs allege in Count One that HCA did not send them CLEC-compliant pre-sale notices and that HCA imposed illegal post-sale charges.   Specifically, Plaintiffs claim  HCA: (1) failed to provide the pre-sale disclosures required by Md. Code, CL § 12-1021(e); (2) imposed "delinquency" charges "which are prohibited by statute" and the RIC; (3) imposed collection charges "which are not authorized by statute and which are specifically prohibited by the RIC because they were not actually incurred"; and (4) charged "Expenses of Retaking and Storing" the vehicle which are prohibited by Md. Code, CL § 12-1021(h)(3).  Complaint at ¶ 72.

Based on these allegations, Plaintiffs claim that HCA "may not obtain a deficiency judgment," "must forfeit all interest charges, fees and other charges with respect to the loan," and must "pay treble damages if the violation was knowing."  Complaint at ¶ 72 (citing Md. Code, CL §§ 12-1018(a)(2), 12-1018(b), and 12-1021(k)(4)).  HCA's business records establish conclusively that Plaintiffs' bald assertions are simply wrong.

## A.    **HCA Sent Proper Notices to Plaintiffs**.

Maryland's Credit Grantor Closed End Credit law ("CLEC") applies to credit contracts that affirmatively elect to follow its procedures, and establishes procedures that must be followed in connection with motor vehicle repossessions. Md. Code, CL § 12-1001, *et seq.*  The CLEC's requirements differ, depending upon whether the repossessed vehicle was sold at a private or public sale.

The CLEC's repossession notice requirements may be summarized as follows:

1)    Notice of Intent to Repossess:  Sent at least ten days before the repossession (this is an optional requirement);

2)    Notice of Right to Redeem or Rights upon Resale:  Sent by registered or certified mail, within five days after repossession;

3)    Notice of Sale:  Sent by certified mail, return receipt requested, at least ten days before selling the vehicle.

4)    Accounting:  Sent after the public or private sale.

Md. Code, CL § 12-1021.  The statute identifies specific information to include in each notice.

### 1.    HCA's Notice of Intent to Repossess Complied with CLEC.

The optional Notice of Intent to Repossess must state the default, the deadline by which the property will be repossessed, and the customer's rights if the property is repossessed.  Md. Code, CL § 12-1021(c).  The July Notice sent to Plaintiffs contains <u>all</u> of this information. Exhibits 2, 3, and 4.  Specifically, the July Notice stated: (1) that the Plaintiffs had defaulted on

their payments and owed HCA $1189.30 and (2) that Plaintiffs had until 8/9/10 to cure their default.  The notice also provided details about the Plaintiffs' right to redeem their vehicle if it was repossessed in the future.  *Id.*  The U.S. Postal Service records establish that HCA sent these Notices by certified mail, that Mr. Muhammad and Ms. McClendon did not accept delivery (Exhibit 6) and that Ms. Benning received the July Notice on July 22, 2010.  Exhibit 7; Exhibit 5 at ¶¶ 8-10 (Ayala Affidavit).

### 2.        HCA's Notice of Right to Redeem Complied with CLEC.

Summary judgment in favor of HCA is proper, even at this preliminary stage, because Plaintiffs cannot dispute that HCA sent appropriate CLEC notices. The Notice of Right to Redeem or Rights upon Resale must inform the customer of his/her right to redeem the vehicle for fifteen days, must provide the redemption amount and address where it is to be paid, must identify the customer's resale rights, must inform the customer of his/her liability for any deficiency balance, and must provide the location where the vehicle is stored.  Md. Code, CL § 12-1021(e).  The notices HCA sent met these requirements.

HCA provided the Notice of Right to Redeem or Rights upon Resale when it mailed the September Notice to each of the Plaintiffs on September 29, 2010, the day after it repossessed the Sonata.  HCA sent Mr. Muhammad's and Ms. McClendon's September Notice by certified mail, to the last known address of the Plaintiffs on file at HCA.  Exhibits 8 and 9; Exhibit 5 at ¶¶ 15 and 16 (Ayala Affidavit).   The United States Postal Service attempted to deliver the September Notice to Mr. Muhammad and Ms. McClendon, but they were left "unclaimed."  The U.S. Postal Service thus returned the letters to HCA.  Exhibits 11, 12; Exhibit 5 at ¶¶ 15, 16 (Ayala Affidavit).  Ms. Benning accepted delivery of the September Notice on October 6, 2010. Exhibit 13; Exhibit 5 at ¶ 17 (Ayala Affidavit).

Plaintiffs allege that HCA violated the CLEC because it did not disclose to them the location where the vehicle was being stored.  Complaint at ¶ 73.  The September Notice, however, identifies the location in the first paragraph:  "The vehicle is currently located at: Remarketing Solutions, 6710 F Ritchie Hwy., Glen Burnie, MD 21061."  Exhibits 8, 9, and 10.

Plaintiffs also allege that HCA violated the CLEC because HCA improperly stated that they may only recover the vehicle by paying "the full amount you owe (not just the past due payments), including our expenses."  Complaint at ¶ 73.  The allegation is patently incorrect. The September Notice states in part:

MARYLAND NOTICE

> The following applies if your retail installment contract was entered into in Maryland:
>
> <u>Right to Redeem:</u>  You have the right to redeem and resume performance of your contract ("reinstate") within 15 days after the date of this Notice.  To redeem, you must pay all monthly installments, late fees and other amounts due at the time of redemption, and the actual and reasonable expenses of retaking and storing the vehicle no later than 10/14/2010.

Exhibits 8, 9, and 10.  The actual language of the letter, therefore, does not require the consumer to pay the full amount owed, Plaintiffs' allegation to the contrary notwithstanding.

Plaintiffs also allege that HCA violated the CLEC because it did not provide an address where they could send the redemption payment.  Complaint at ¶ 73.  The September Notice, once again, fully provides this very information.  HCA informed Plaintiffs that "[p]ayment may be sent to the address above, Attn: Asset Remarketing."  Exhibits 8, 9, and 10.

Plaintiffs allege further that HCA violated the CLEC because it did not provide the redemption amount.  Complaint at ¶ 73.  Again, it is indisputable that HCA's September Notice

12

stated a $3,800.75 redemption amount and itemized its calculation.  Exhibits 8,  9, and 10.  Thus, Plaintiffs' assertions as to the September Notice do not withstand scrutiny.

**3.      HCA's Notice of Sale Complied with CLEC.**

The Notice of Sale must provide the consumer with the time and place when the repossessed vehicle will be offered for resale.  Md. Code, CL § 12-1021(j)(1)(ii).  HCA satisfied this requirement when it sent the October Notice to Mr. Muhammad, Ms. McClendon, and Ms. Benning by certified mail, return receipt requested, on October 19, 2010.  Exhibits 14,  15, and 16.  That Notice expressly shows that the Sonata would be sold at 600 Winfield Road, Saint Albans, West Virginia 25177.  *Id.*  Delivery of this Notice was made on October 22 to Mr. Muhammad and Ms. McClendon and on October 25 to Ms. Benning.  Exhibits 17,  18, and 19.

Plaintiffs allege that HCA violated the CLEC because the October Notice falsely stated that the right to reinstate the contract was conditioned on whether or not HCA "previously notified you in writing that you have the right to redeem."  Complaint at ¶ 73.  The October Notice does not condition reinstatement on whether the customer was previously notified in writing of their right to redeem.   Rather, it explains that HCA's Maryland consumers have available two redemption rights.   The CLEC granted Plaintiffs an opportunity to redeem the vehicle during the fifteen (15) day period after HCA issued the Notice of Right to Redeem required by § 12-1021(f).  Md. Code, CL § 12-1021(g).  In addition, HCA voluntarily notified Plaintiffs that they could redeem the vehicle beyond that timeframe, and until the date of sale, by tendering payment in full to HCA.  *See* Md. Code, CL §§ 9-617(7) and 9-623(c)(2).

Additionally, in a separate section titled "MD and DC Residents," the October Notice reminds the customer that s/he may still have the right to redeem ("reinstate") by paying only the past due monthly installments, any late fees and other amounts due, plus the reasonable expenses

13

of retaking and storing the vehicle, pursuant to the CLEC, Md. CL § 12-1021(h), if previously notified of that right.  In this case, HCA also notified Plaintiffs of their right to redeem in the September Notice.

Plaintiffs allege that HCA violated the CLEC because the October Notice was not hand delivered or sent by registered or certified mail, return receipt requested.  Complaint at ¶ 73.  The undisputed, and indisputable, facts confirm that HCA sent the October Notice by certified mail, return receipt requested.

### 4.     HCA's Accounting Notice Complied with CLEC.

The information required in the post-sale accounting depends upon how the credit grantor sold the property.  If sold at private sale, as occurred here, the accounting must include:

(i)    The unpaid balance at the time the goods were repossessed;
(ii)   The refund credit of unearned finance charges and insurance premiums, if any;
(iii)  The remaining net balance;
(iv)   The proceeds of the sale of the goods;
(v)    The remaining deficiency balance, if any, or the amount due the buyer;
(vi)   All expenses incurred as a result of the sale;
(vii)  The purchaser's name, address, and business address;
(viii) The number of bids sought and received; and
(ix)   Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.

Md. Code, CL § 12-1021(j)(2).  The CLEC does not mandate the order in which the proceeds from private sales must be applied.[7]  *See* Md. Code, CL § 12-1021.

HCA sent a post-sale accounting to Mr. Muhammad and Ms. McClendon, containing <u>all</u> of this information, by first class mail on November 16, 2010.  Exhibits 20 and 21.  Indeed, this notice lists the purchaser's name and business address, the number of bids sought, the number of

---

[7]  The CLEC does state how proceeds from public sales must be applied.  Md. Code, CL § 12-1021(k).  In the absence of CLEC requirements, application of proceeds for private sales are governed by the applicable UCC provisions.  *See, e.g.,* Md. Code, CL §§ 9-201 and 9-615.

bids received, and how, precisely HCA accounted for the costs.  Furthermore, the statement has an entry that uses the precise words of Md. Code, CL § 12-1021(j)(2)(ix) about including a description of "the condition of the [vehicle] at the time of repossession."   Thus, HCA understood and satisfied CLEC, Plaintiffs' protestations to the contrary notwithstanding.

### B.   HCA's Post-Sale Charges are Permitted by Both the CLEC and the RIC.

Plaintiffs also allege that HCA improperly charged them for delinquency fees, collection fees, and retaking/storage fees that were prohibited by CLEC and the RIC.  Complaint at ¶ 74. Once again, the undisputed material facts completely disprove this unsupported allegation.

### 1.   HCA Did Not Assess Delinquency Fees.

Plaintiffs allege that HCA violated Md. Code, CL § 12-1008(a)-(b) and CL § 12-1021(j)(2), by charging "delinquency fees."   Complaint at ¶¶ 49, 74.  This assertion is also wrong.  HCA did not apply any delinquency or late fees in determining Plaintiffs' deficiency balance.  Even if it had, CL § 12-1021(j)(2) does not restrict HCA from charging a late fee; it merely sets forth the information that must be included in a post-sale notice to the consumer.

Md. Code, CL § 12-1008(b) prohibits late fees and delinquency charges "unless the agreement, note, or other evidence of the loan permits."   Plaintiffs allege that HCA's post-sale notice imposed "delinquency" charges even though the RIC "does not have a provision for imposing any late or delinquency charges" Complaint at ¶¶ 27, 74; Exhibits 1 and 3 to the Complaint.  Summary judgment is proper because HCA did not include a late fee or delinquency charge in the November Notice.

The November Notice applied a charge of $1,541.88 for "Delinquency and Collection Charges."  Exhibits 20 and 21.  That amount consisted of $1,041.88 in interested owed on the

account and the $500 repair charge from Miles Body Shop discussed above.[8]  Exhibit 5 at ¶ 26

(Ayala Affidavit).  All such charges are permissible under CLEC and under the RIC.  As a result,

HCA did not, as a matter of law, violate Md. Code, CL § 12-1008(a)-(b) or the RIC.

> **2.     HCA Properly Charged Plaintiffs for the Actual Collection Charges it Incurred to Retake and Store the Vehicle.**

Plaintiffs allege in Count One that Md. Code, CL § 12-1021(h)(3) prohibits HCA from

collecting "Expenses of Retaking and Storing" the vehicle.  Complaint at ¶ 74.  The Court should

dismiss this claim because § 12-1021(h)(3) does not address, let alone limit, the charges a credit

grantor may impose upon sale of a repossessed vehicle.[9]  Rather, this sub-section, which  begins

with the words ""[t]o redeem the property," addresses the steps a consumer must take to redeem

the vehicle prior to re-sale and the amount a credit grantor may charge for the redemption.  Md.

Code, CL § 12-1021(h).

Even if Md. Code, CL § 12-1021(h)(3) did apply to post-sale expenses, which it patently

does not, HCA was entitled to collect expenses of retaking and storage because it sent Plaintiffs

"the discretionary notice provided for in" CL § 12-1021(c) when it mailed the July Notice.  CL §

12-1021(c) states that:

> (1) At least 10 days before a credit grantor repossesses any
> tangible personal property, the credit grantor may serve a written
> notice on the consumer borrower of the intention to repossess the
> tangible personal property.

---

[8]  The September 29, 2010 letter sent to the Plaintiffs lists a $500 fee for "Late Fees and Other Charges Due."  This is for the same $500 charge from Miles Body Shop.

[9]   The Plaintiffs also inexplicably allege that CL § 12-1021(e)(3) prohibits HCA from collecting "Expenses of Retaking and Storing" the vehicle.  To the contrary, this section states "[w]ithin 5 days after the credit grantor repossesses the tangible personal property the credit grantor shall deliver to the consumer borrower personally or send to him at his last known address by registered or certified mail, a written notice which briefly states . . . (3) The exact location where the tangible personal property is stored and the address where any payment is to be made."  It is unclear how this makes the collection of costs for "expenses of storing and retaking" illegal, particularly given that § 12-1021(h)(3) states, "If the discretionary notice provided for in subsection (c) of this section was given, pay the actual and reasonable expenses of retaking and storing the property."

(2)  The notice shall:
    (i) State the default and any period at the end of which the
    tangible personal property will be repossessed; and
    (ii)  Briefly state the rights of the consumer borrower in
    case the tangible personal property is repossessed.

Section Md. Code, CL § 12-1021(j)(2) also supports HCA's right to charge Plaintiffs for its expenses in retaking and storing the Plaintiffs' vehicle.  Under CL § 12-1021(j)(2)(vi), a credit grantor that sells a vehicle at a private sale must provide an accounting to the consumer which identifies "[a]ll expenses incurred as a result of the sale,"  among other information.  HCA did so, and Plaintiffs cannot, therefore, succeed on their bare assertions that HCA "wrongfully" charged them retaking and storage expenses.

### 3.  Even if HCA Violated the CLEC, Plaintiffs are Not Entitled to Recover Damages Under §§ 12-1018(b) and 12-1021(k)(4).

Plaintiffs seek to prevent HCA from collecting a deficiency judgment based upon Md. Code § 12-1021(k)(4).  Even if HCA violated the CLEC, which it did not, dismissal is proper under Rule 12(b)(6) because the statute only applies to vehicle sales made at public auction.

The CLEC statutory framework allows credit grantors repossessing a vehicle upon a borrower's default to re-sell by either "a private sale or public auction."  Md. Code, CL § 12-1021(j)(1).  The type of sale dictates how the credit grantor "accounts" to the borrower for the sale proceeds, and describes how the credit grantor may be penalized for procedural errors. Specifically, if a vehicle is sold at a public sale, subsection (k) of Md. Code, CL § 12-1021 controls.  If a credit grantor re-sells the vehicle at a public sale and does not supply the pre- or post-repossession notices described in Md. Code, CL § 12-1021, that credit grantor "shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." Md. Code, CL § 12-1021(k)(4).

Here, Plaintiffs allege throughout the Complaint that HCA sold the Sonata at a private sale.  Complaint at ¶ 37.  Thus, subsection (k) does not apply, and Plaintiffs cannot state a claim as a matter of law.

## II.   Count Two Does Not Allege An Actionable Breach Of Contract Claim.

In Count Two, Plaintiffs allege that HCA materially breached its contracts with Named Plaintiffs.  Complaint at ¶ 78.

### A.   Summary Judgment Is Proper on Count Two For the Same Reasons Explained in Count One.

Count Two is based upon the identical alleged CLEC violations pled in Count One.  Specifically, Count Two alleges that "[t]he provisions of CLEC become a part of the contract just as if the parties expressly included each specific CLEC provision in their credit contracts  . . . [w]hen HCA violated CLEC . . . HCA materially breached its contracts with the Named Plaintiffs. . . ."  Complaint at ¶¶ 77-78.   Because HCA did not violate CLEC, it did not breach the RIC, and summary judgment is proper for the same reasons set forth above in Argument I (which is incorporated herein by reference).

### B.   Count Two Should be Dismissed Under Rule 12(b)(6) Because it Does Not State a Claim For Which Relief May be Granted.

Furthermore, even if HCA had violated CLEC, dismissal is still appropriate because Count Two does not state an independent cause of action for breach of contract as a matter of law.  Although the Federal Rules permit alternative pleading, a plaintiff may not assert a claim which merely duplicates another claim and does not give rise to an independent cause of action. *Lerner Dev. Co. Ltd. P'ship v. Lerner*, No. 265653, 2007 Md. Circ. Ct. LEXIS 5, at *2-3 (2007).[10]   In *Lerner*, the plaintiff's complaint alleged alternative claims for breach of a partnership agreement and breach of an implied duty of good faith "arising out of the partnership

---

[10]  A copy of this case is attached hereto as Exhibit 23 in accordance with Local R. 105.5(a).

agreement" and "by virtue of the Uniform Partnership Act."  *Id.*   The Court rejected the plaintiff's attempt to shoehorn a statutory duty into a separate contract claim, holding that:

> [t]o the extent the duty arises out of statute, it does not give rise to an independent cause of action but is ancillary and dependent upon the breach of a separate independent duty proscribed by statute ..."

*Id.*  This case is no different.  Plaintiffs' Count Two <u>only</u> alleges that HCA breached the credit contract because HCA violated the contract's CLEC provisions.  Complaint at ¶ 77.

Similarly, in *Swedish Civil Aviation v. Project Mgmt. Enter.*, 190 F. Supp. 2d 785 (D. Md. 2002), this Court dismissed a breach of duty of good faith and fair dealing claim because it was "merely part of an action for breach of contract" and could not stand on its own.  190 F. Supp. 2d at 794; *see also Mount Vernon v. Branch*, 170 Md. App. 457, 472 (2006) (breach of duly allegedly imputed into a contract between the parties was not a "stand-alone cause of action.").

In this case, HCA is entitled to summary judgment on Count Two because it does not state an independent cause of action or set forth an independent duty beyond the alleged CLEC violations of Count One.

**III.**    **Count Three Requesting Declaratory Judgment And Injunctive Relief Is Improper Because HCA Can Recover The Deficiency Balance And Other Costs From Plaintiffs.**

Plaintiffs demand in Count Three that the Court enter a declaratory judgment that "HCA may not collect any a deficiency balance" and issue an appropriate injunction.  Complaint at ¶¶ 80-90.  Plaintiffs' Count Three does not withstanding scrutiny.

**A.**    **Summary Judgment is Proper on Count Three for the Same Reasons Explained in Count One.**

Summary judgment is proper on Count Three because HCA complied with the CLEC and RIC requirements and may lawfully collect a deficiency balance.

Count Three relies solely on CLEC violations alleged in Count One.  Accordingly, Count Three fails, as a matter of law, for the same reasons.  *See also Twombly*, 550 U.S. at 570 ("To be valid, a claim must not be merely conceivable; rather, it must be plausible on the facts alleged.").

**B.**    **Count Three Should be Dismissed Under Rule 12(b)(6) Because it Does Not State a Claim for Which Relief May be Granted.**

Furthermore, Count Three should be dismissed under Rule 12(b)(6) because it does not state a claim for which relief may be granted.

A District Court may only award a declaratory judgment if an "actual controversy within its jurisdiction" exists.  28 U.S.C. § 2201(a).  Plaintiffs do not allege that HCA participated in any efforts to collect the deficiency balance from Plaintiffs.  Thus, Plaintiffs do not allege a justiciable claim or controversy.

In addition, Plaintiffs do not state a claim because they predicate Count Three solely on Md. Code, CL § 12-1021(k)(4).  *See* Complaint at ¶¶ 50, 72, citing Md. Code, CL § 12-1021(k)(4).  As explained in Section I.C, above, CL § 12-1021(k)(4) only applies to public sales. It does not apply to Plaintiffs' claims given their own allegations that HCA sold the vehicle at a private sale.  *See* Complaint at ¶ 7.

**IV.**    **Count Four Alleging Restitution And Unjust Enrichment Fails To State A Claim Upon Which Relief Can Be Granted.**

Count Four alleges that HCA "accepted the benefits conferred upon them [sic] by Named Plaintiffs and members of the Class when they [sic] accepted the money paid toward illegally assessed deficiency balances, interest, costs, fees and other charges."  Complaint at ¶ 93.  Count Four cannot state a claim, and must be dismissed pursuant to Rule 12(b)(6), because Plaintiffs do not allege that they paid even a penny of any such "illegal" charges to HCA and because an unjust enrichment claim cannot be pled when an express contract exists.

A.      **Plaintiffs Did Not Pay the Allegedly Illegal Charges.**

The elements of an unjust enrichment claim are that the plaintiff conferred a benefit upon the defendant, that the defendant knew of the benefit, and that the defendant accepted or retained the benefit under circumstances that make it inequitable to permit the defendant to keep the benefit.  *Mona v. Mona Elec. Group, Inc.*, 176 Md. App. 672, 712-13 (2007); *Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 267 (2007).

Plaintiffs do not set forth these threshold elements because they do not allege paying any "illegal" charges; nor do they allege that HCA accepted and retained such charges.  All Plaintiffs allege is that:  1) they purchased a Sonata in 2006; 2) their RIC was assigned to HCA; 3) HCA accepted monthly payments from Plaintiffs; 4) HCA repossessed the Sonata; 5) HCA notified Plaintiffs prior to the private sale; 6) HCA sent them a post-sale notice identifying the deficiency; and 7) the post-sale notice included "illegal" charges.  Complaint at ¶¶ 25,  33, 34, 38.  These allegations do not support their legal conclusion that they paid and HCA accepted any "illegal" charges.  In fact, Plaintiffs do not even allege that HCA undertook post-sale collection efforts to collect the deficiency.

Consequently, Count Four fails to state a claim for unjust enrichment or restitution because the Plaintiffs do not allege facts demonstrating that they conferred any benefit upon HCA.  *See, Bender v. Suburban Hosp. Inc.,* 159 F.3d 186, 192 (4th Cir. 1988) (conclusory allegations should be rejected when unsupported by factual allegations); *Mona*, 176 Md. App. at 713 (unjust enrichment requires allegations of benefit conferred and payment accepted); *Twombly*, 550 U.S. at 550 (conclusory allegations that merely recite the elements of a cause of action do not state a claim).

**B.**     **A Claim for Restitution or Unjust Enrichment Cannot Stand When an Express Contract Exists.**

Count Four should also be dismissed under rule 12(b)(6) because there is written contract between the parties.   Maryland law does not permit quasi-contractual claims in such circumstances.  As the Maryland Court of Appeals has explained:

> The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.  The reason for this rule is not difficult to discern.  When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated.  As a result, they have no remedy under the contract for restoring their expectations.  In desperation, they turn to quasi-contract for recovery.  This the law will not allow.

*Caroline County v. J. Roland Dashiell & Sons, Inc.,* 358 Md. 83, 96 (2000) (internal citations omitted); *see also Writ Mortgage, Inc. v. S.A.S. Assocs.,* 214 F.3d 528, 534 (4th Cir. 2000) ("Where a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not apply."); *Odyssey Travel Center, Inc. v. Ro Cruises, Inc.,* 262 F. Supp. 2d 618, 626 (D. Md. 2003).

In this case, Plaintiffs impermissibly press claims of unjust enrichment and restitution for fees and charges despite admitting that those fees and charges stem from the parties' written contract.  Complaint at ¶¶ 25-26.  The RIC permits HCA to repossess the vehicle upon default, to sell the vehicle and to pursue a deficiency balance.  Exhibit 1 to Complaint.  *See, Bender*, 159 F.3d at 192 (claim must be dismissed where legal conclusions are unsupported by factual allegations).  Accordingly, Count Four fails to state a claim upon which relief can be granted.[11]

---

[11]  These quasi-contract claims are nothing more than efforts to recharacterize Count One's alleged CLEC claims. Consequently, Count Four should also be dismissed because it does not state an "independent cause of action" from the Count One.

## V.   Count Five Alleging Violations of Maryland's Consumer Protection Act and Consumer Debt Collection Act Fails To State A Claim Upon Which Relief Can Be Granted.

Count Five purports to allege that HCA violated Maryland's Consumer Protection Act and the Maryland Consumer Debt Collection Act.  Md. Code, CL § 13-101, *et seq.* and Md. Code, CL § 14-201, *et seq.,* respectively.  Neither set of allegations set forth a claim upon which relief can be granted.

### A.   Plaintiffs Do Not Allege, and HCA Did Not Commit, a Violation of the Consumer Protection Act.

Plaintiffs allege that HCA violated the Consumer Protection Act (the "CPA") by making "false or misleading oral or written statements."  Complaint at ¶ 99; Md. Code, CL § 13-303(3)-(4) and § 13-301(1).

The Consumer Protection Act exists to protect consumers against unfair or deceptive practices in consumer transactions.  *Legg v. Castruccio*, 100 Md. App. 748, 756, 642 A.2d 906, 910 (1994).  The statute is intended to be broadly construed in furtherance of that goal. *Citaramanis v. Hallowell*, 328 Md. 142, 150 (1992).  Notwithstanding the statute's broad scope, Count Five does not state a claim and should be dismissed.

First, as discussed at length above, HCA complied with CLEC and sent appropriate notices to Plaintiffs.  Accordingly, summary judgment is proper on Count Five because HCA may properly claim Plaintiffs' deficiency balance.

Second, Count Five does not state a claim because Plaintiffs did not suffer any actual damages.  The CPA permits an injured consumer to pursue relief by either filing a complaint with the applicable agency or by pursuing a private right of action with the Court.  Md. Code, CL § 13-408.  If the consumer opts for a private action, he or she must prove an actual injury or loss caused by the prohibited action.  Md. Code, CL § 13-408; *Citaramanis,* 328 Md. at 152; *see also*

*Golt v. Phillips*, 301 Md. 1, 12 (1986) ("the General Assembly intended that a plaintiff pursuing a private right of action under [the CPA] prove actual injury of loss sustained");  *DeReggi Constr. Co. v. Mate*, 130 Md. App. 648, 665 (2000).

Maryland courts require that a CPA plaintiff's "injury must be objectively identifiable" and that loss must be "measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentations."  *Lloyd v. General Motors Corp*., 397 Md. 108, 143 (2007).  This constraint "prevent[s] aggressive consumers from acting as self-appointed private attorneys general in situations in which the statutory violation did not personally harm the consumer and the violation was relatively minor, and the fear that consumers would use the statute's power to harass or coerce merchants."  *Legg,* 100 Md. App. at 757 (1994) (citing *Citaramanis,* 328 Md. at 152).

The Court should dismiss Count Five pursuant to Rule 12(b)(6) because Plaintiffs do not allege any "injury or loss" due to their reliance on any of HCA's alleged "misrepresentations." *Citaramanis*, 328 Md. at 152; *Lloyd,* 398 Md. at 143.   Plaintiffs purchased the Sonata pursuant to the terms of a RIC.  Complaint at ¶ 25.  The RIC required them to make monthly payments to HCA.  Complaint at ¶ 32; *see also* Exhibit 1 to Complaint.  Plaintiffs do not dispute that they defaulted on their payments and that HCA was legally entitled to repossess their car.

Plaintiffs jump from these bald factual assertions to the conclusory allegation that "many [members of the putative class] made payments to [HCA] which were not due and owing." Complaint at ¶ 101.  Plaintiffs, however, do not allege that they made a single payment to HCA that was not owed or what specific "amount [they] spent or lost as a result of … the seller's misrepresentations." *Lloyd,* 397 Md. at 143.

Third, Count Five does not state a claim because HCA did not engage in any deceptive acts with regard to the extension of credit to Plaintiffs.  Plaintiffs allege that HCA violated Md. Code, CL § 13-303(3), which prohibits unfair or deceptive practices with regard to the extension of consumer credit.  Complaint at ¶ 102.  The Court considers the parties' conduct when the credit was extended in assessing whether a § 13-303 violation exists; the Court does not consider what may have happened years later.  *See Berg v. Byrd*, 124 Md. App. 208, 214 (1998) ("the CPA imposes liability only for material misrepresentations or omissions occurring at the inception of the lease, and not those made throughout the term of the lease") (*citing Venture 4 v. Brunson*, 335 Md. 661, 685 (1994)).

Here, Plaintiffs do not allege any "material misrepresentations or omissions" in 2006 when they signed the credit contract.  Plaintiffs only allege that they purchased a Sonata from Antwerpen pursuant to a written RIC that was assigned to HCA.  Complaint at ¶¶ 25, 32.  The Complaint does not make <u>any</u> factual allegations about whether Antwerpen or HCA properly, or improperly, extended credit.  Nor does the Complaint make any factual allegations that Antwerpen or HCA took any unfair or deceptive actions in connection with Plaintiffs' automobile purchase or in extending them credit.

In the absence of any factual allegations that HCA made material misrepresentations or omissions in 2006 when the Plaintiffs signed the credit contract, Count Five fails to state a claim for a CL § 13-303(3) violation.  *Berg v. Byrd*, 124 Md. App. at 214; *Ashcroft v. Iqbal,* 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face.").

**B.**      **The Complaint Does Not Allege a Valid Claim Under the Maryland Consumer Debt Collection Act.**

Plaintiffs also allege that HCA violated the Consumer Debt Collection Act by "claiming and attempting to enforce a right to collect a debt with knowledge that the right the debt does not exist."  Complaint at ¶ 103; Md. Code, CL § 14-202(8).

The Consumer Debt Collection Act is invalid because HCA did not initiate a collection action to collect the post-sale deficiency balance.  Rather, HCA simply provided Plaintiffs with the statutory post-sale accounting.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint or, in the alternative, enter summary judgment in HCA's favor.

Respectfully submitted,

*/s/ Harold G. Belkowitz*
Harold G. Belkowitz (Fed. Bar. No. 013031)
hgbelkowitz@ober.com
Ober, Kaler, Grimes & Shriver
A Professional Corporation
1401 H Street, N.W., Fifth Floor
Washington, D.C. 20005-3324
(202) 326-5037
Fax:  (202) 326-5267

Diane Festino Schmitt (Fed. Bar. No. 03633)
dfschmitt@ober.com
Elizabeth J. Cappiello (Fed. Bar. No. 29185)
ejcappiello@ober.com
Ober, Kaler, Grimes & Shriver
A Professional Corporation
100 Light Street
Baltimore, Maryland 21202
(410) 685-1120
Fax:  (410) 547-0699

*Counsel for Hyundai Capital America, Inc.*

26